IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 4:01-cr-00058-SPM-AK

CHRISTOPHER BERNARD OWENS,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

     This cause is before the Court on Defendant's motion to vacate pursuant to § 2255 and supporting memorandum. Doc. 64. After the Government was ordered to respond, Defendant was granted leave to file a supplemental motion to vacate, and the Government was ordered to file a response to that document as well. Docs. 66-68. The Government filed its response, Docs. 69 & 70, and Defendant filed a reply. Doc. 73. This matter is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

## BACKGROUND

     Defendant was indicted in a five-count drug indictment, including Count Five, knowingly and intentionally possessing with intent to distribute cocaine and more than fifty grams of a substance containing cocaine base, "crack cocaine." Doc. 2. On October 31, 2001, the Government filed an Information and Notice of Intent, advising of its intention to seek enhanced

penalties in this case based on Defendant's prior felony drug convictions.  Doc. 5.  More

specifically, the Government informed Defendant that as to Count Five he was subject to a

mandatory life sentence, rather than ten years to life imprisonment.  *Id.*

      On December 6, 2001, Defendant appeared before the magistrate judge for a change of

plea.  Initially, the Court advised Defendant:

> THE COURT:          I'm going to have to ask questions.  And while I do
> that, if there comes a point where you don't
> understand or you have misgivings, we can stop and
> you can talk with Mr. Clark.  I'll give you the time
> that you need to do that.  If we need to stop and
> start again on another day, I would be glad to do
> that too.  There's no penalty that I would impose for
> you exercising your right to counsel.
>
>                * * *
>
> Do you understand that?
>
> THE DEFENDANT:      Yes, sir.

Doc. 37 at 3-4.  After reviewing the rights that Defendant was waiving by pleading guilty, the

Court asked:

> THE COURT:          As I understand it, you intend to plead guilty to
> Count 5, is that true?
>
> THE DEFENDANT:      Yes.
>
> THE COURT:          Now, a plea of guilty admits the truth of Count 5,
> but a plea of not guilty denies the allegations in
> Count 5.  Do you understand the difference between
> a guilty and a not guilty plea?
>
> THE DEFENDANT:      Yes, sir.

*Id.* at 8.

      The Court further advised Defendant as follows:

THE COURT:                    If your plea of guilty is accepted by Judge Mickle,
                              you may waive or give up any defense you may
                              have to Count 5.  You have to go to trial to put on a
                              defense, and I don't know if you have a defense, but
                              what I'm saying is, you will no longer be able to put
                              on a defense if you plead guilty.  Do you understand
                              that fact?

THE DEFENDANT:                Yes, sir.

                                       * * *

THE COURT:                    [D]o you wish to plead guilty to Count 5?

THE DEFENDANT:                Yes.

*Id*. at 9.

The Court then explained to Defendant the elements which the Government would be

required to prove, including, in pertinent part:

THE COURT:                    Third, it has to be proven that you distributed, and
                              you possessed with intent to distribute, two
                              controlled substances.  The first controlled substant
                              that's alleged is cocaine, that is powder cocaine;
                              and the second, it is alleged that you possessed with
                              intent to distribute, and you distributed, more than
                              50 grams of crack cocaine.

                              So the substances that...have to be proved are
                              cocaine and crack cocaine, and the amount that has
                              to be proved is some detectable quantity of cocaine,
                              and more than 50 grams of crack cocaine.

                                       * * *

                              Do you need to talk to Mr. Clark?

THE DEFENDANT:                No, I don't need to talk.  Yes.

THE COURT:                    Do you understand what you're charged with?

THE DEFENDANT:                Yeah.

* * *

| | |
|---|---|
| THE COURT: | [S]pecifically, do you understand that the government has to prove that it was more than 50 grams of crack cocaine?  Do you understand that? |
| THE DEFENDANT: | Yes, sir. |

*Id*. at 10-12.

The Court then queried Defendant about the Statement of Facts:

| | |
|---|---|
| THE COURT: | There's a statement of facts, isn't there, that has been signed?  Did you put your signature to this statement of facts? |
| THE DEFENDANT: | Yes, I did. |
| THE COURT: | That I have?  Did you read over it with Mr. Clark before you did that? |
| THE DEFENDANT: | Yeah, we went over it. |
| THE COURT: | You went over it.  Okay.  This statement of facts at the very end says you've read the above statement of facts and agree that the government can present evidence as set out above.  Is that true? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | And you also say you understand you may present the court with your own version of the facts and dispute particular allegations against you.  And that's the complete acknowledgment.

In this statement of facts it is alleged that there was a search of your residence and that you were standing outside, and inside the residence were 28.7 grams of...powder cocaine and 70.8 grams of cocaine base.  That means crack cocaine.

Do you agree that the government can prove that that happened? |
| THE DEFENDANT: | Yes. |

| | |
|---|---|
| THE COURT: | You do.  All right.  Do you also admit that on September 7th, 2001, that you possessed with intent to distribute some amount of powder cocaine and more than 50 grams of crack cocaine? |
| THE DEFENDANT: | Yes. |

*Id*. at 12-13.

Next, the Court reviewed the penalties with Defendant:

| | |
|---|---|
| THE COURT: | The penalty that you face, should Judge Mickle accept the guilty plea, is in the plea agreement and would–may I have that? |
| | And it states in the plea agreement that based upon prior convictions, that you face an enhanced penalty of a minimum mandatory term of life imprisonment....Are you aware that those are the penalties that you face based upon your plea of guilty? |
| THE DEFENDANT: | Yes. |
| THE COURT: | And has Mr. Clark gone over that with you? |
| THE DEFENDANT: | Yes. |
| THE COURT: | In particular, you understand that unless there's some sort of a substantial assistance motion, that Judge Mickle has to sentence you to a minimum mandatory of life imprisonment without parole?  Do you understand that fact? |
| THE DEFENDANT: | Yes. |

* * *

| | |
|---|---|
| THE COURT: | Do you understand he must impose a minimum mandatory term of life imprisonment unless the government files a substantial assistance motion of a type which permits him to sentence lower than a minimum mandatory statutory term? |
| THE DEFENDANT: | Yes, sir. |

*Id.* at 13-16.

The Court then requested that Defendant's counsel "state the substance of this agreement

for the record":

| | |
|---|---|
| MR. CLARK: | Basically, Your Honor, it's an agreement from Mr. Owens to plead guilty to Count 5 of the indictment, which charges him with possession with the intent to distribute crack cocaine in the amount of more than 50 grams.  In return for the guilty plea, the government is, in this agreement, offering Mr. Owens the opportunity to cooperate.  They have agreed to advise the court at sentencing as to the nature and extent of Mr. Owens' cooperation. |
| | We've gone over the reasons why the agreement can be revoked....That's basically–he's pleading to a minimum mandatory sentence of life imprisonment. |
| THE COURT: | Okay, Mr. Owens...has Mr. Clark correctly stated the substance of this plea agreement?  Is this what you understand that you've been promised? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | And Mr. Simpson, is this your understanding too? |
| MR. SIMPSON: | Yes, Your Honor.  We dropped the other counts, although that's really not going to affect the sentence because of the sentence that Count 5 carries, a life sentence, and Mr. Owens is hoping, and we are agreeing to evaluate his efforts at cooperation to see whether they amount to substantial assistance. |
| THE COURT: | All right.  and did you read over the plea agreement before you signed it-- |
| THE DEFENDANT: | Yes, I did. |
| THE COURT: | Mr. Owens?  You did? |
| THE DEFENDANT: | (Nods affirmatively) |

| | |
|---|---|
| THE COURT: | Did you discuss it completely with Mr. Clark before you signed it? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Has anyone made any promises to you, other than those set forth in this written plea agreement? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | Are there any secret understandings that you're counting on, other than in this written plea agreement? |
| THE DEFENDANT: | No, sir. |

* * *

| | |
|---|---|
| THE COURT: | [D]o you understand that even though...counts are dismissed, that the district judge is required to consider at sentencing all relevant conduct and must consider this behavior at sentencing in arriving at a proper sentence? |
| | He would first have to determine whether you are responsible for the behavior, and then if you are, he is supposed to consider it at sentencing.  Do you understand that? |
| THE DEFENDANT: | Yes, sir. |

*Id*. at 17-19.

The Court next probed the voluntariness of Defendant's plea and the effectiveness of his

counsel:

| | |
|---|---|
| THE COURT: | Has anyone made any threats of force to you to plead guilty, or pressured you, or intimidated you in any way, or promised you any reward to get you to plead guilty? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | You've been represented by Mr. Clark, who's in |

court with you today.  Have you had sufficient time
to discuss your case fully with him?

THE DEFENDANT:          Yes, sir.

THE COURT:              Do you feel like you have?

THE DEFENDANT:          Yes, sir.

THE COURT:              Do you need any more time to do that before I
                        finish up here?

THE DEFENDANT:          (Indicates negatively)

THE COURT:              You don't?  Okay.  Have you discussed possible
                        defenses with Mr. Clark?

THE DEFENDANT:          Yes, I have.

THE COURT:              Are you satisfied with the way that Mr. Clark has
                        represented you?

THE DEFENDANT:          Yes.

THE COURT:              Do you have any complaint about anyone in his
                        office, in the way that they've represented you?

THE DEFENDANT:          No, sir.

THE COURT:              Then I ask you as to Count 5, how do you plead?

THE DEFENDANT:          Guilty.

*Id*. at 21-22.

At the conclusion of the hearing, the Court filed the Statement of Facts and the Plea

Agreement and entered the Report and Recommendation recommending acceptance of

Defendant's guilty plea.  *Id*. at 23; *see also* Docs. 19, 20, & 22.

In pertinent part, the Statement of Facts provided:

1.      On August 28, 2001, Owens sold 12.9 grams of cocaine to
        an informant...at a residence at 801 Coble Drive,

Tallahassee, Florida.  Owens stated that he could cook cocaine into crack....Owens stated that the residence was just a front for his drug business and that he did not really live there.

* * *

4.      On September 7, 2001, a search warrant was executed at the Coble Drive residence.  Owens was found standing in the driveway.  As officers approached, Owens threw down a baggie containing a mixture of powder and crack cocaine. In the garage area was a locked storage room, previously identified by the informant, which was opened with keys taken from Owens.  Inside was a shoebox, which contained more crack cocaine and powder cocaine....The drugs from the residence totalled 28.7 grams of cocaine powder and 70.8 grams of cocaine base.

5.      All of the controlled buys and some related telephone calls with Owens were recorded.  Owens' fingerprints have been identified on one of the containers for drugs found in the search warrant.

6.      Following arrest and advice of Miranda rights, Owens made lengthy admissions, including that the drugs seized were the remnants from five ounces of powder cocaine he had purchased....that he sold powder and crack according to his customer's requests; that on more than fifty occasions he had gotten ounces of crack from a second named and described supplier, who lived in Tallahassee; that on more than fifty occasions he had gotten one to two ounces of crack from a third named and described supplier, who also lived in Tallahassee; that he had recently made two half-ounce crack buys from a fourth supplier; that he had bought one-half ounce of crack from a fifth supplier....

7.      Defendant has prior convictions for sale of cocaine in 1989, for sale of controlled substance in 1992, and for sale of controlled substance in 1997.

Doc. 19.

        The Court subsequently accepted Defendant's guilty plea.  Doc. 24.  Shortly after the

Probation Officer mailed Defendant's counsel a copy of the Presentence Report, Defendant

moved to withdraw his plea.  Doc. 28.  As grounds for this request, Defendant denied "any

involvement in the drug transactions referred to in the Indictment and agreed to plead 'guilty' to

count 5 only in an effort to protect family members."  *Id*.  After "realiz[ing] the impact of

pleading 'guilty' to count 5, life imprisonment," he did not "wish to continue to take

responsibility for an act which he did not do."  *Id*.  The Government opposed the motion, stating

that "Defendant's claim that he pled guilty to an offense he did not commit is frivolous and does

not constitute 'a fair and just reason' to permit withdrawal" pursuant to Fed. R. Crim. P. 32(e).

Doc. 30.

Applying the four factors from *United States v. Buckles*, 843 F.2d 469 (11th Cir. 1988),

the Court denied the motion, finding that Defendant's "reason for withdrawal is unconvincing

and does not constitute a 'fair and just' reason."  Doc. 32.

At sentencing, the Court began by giving Defendant and his counsel an opportunity to

speak:

> When I received the presentence report, I went and discussed it with Mr. Owens,
> as I am required to do, and, at that time, Mr. Owens told me that everything in the
> presentence report relating to the offense conduct was not true because he had not
> done those things.  And, consequently, I filed a motion with the Court asking that
> Mr. Owens be allowed to withdraw his plea.  He told me that he had said those
> things...in an effort to protect family members.  He had taken responsibility for
> the activities, even though he, himself, had not committed those acts; and that at
> the time of his statements to law enforcement when he was arrested, he had been
> smoking a joint and was not in the right state of mind, and, therefore, nothing he
> could say could be used against him.
>
> I filed that motion for Mr. Owens, and the Court...has reviewed and denied our
> request.
>
> I've talked to Mr. Owens about it today, about the presentence report.  He still
> insists that what he has said is true; that he is not responsible for this case.  And
> basically that's where we are today.

Doc. 51 at 6.

In response, the Government called three law enforcement witnesses to testify regarding the search of the residence, the drug seizure, and Defendant's statements to officers "because [it] understood, from the objections that were filed, that basically Mr. Owens contests everything." *Id.* at 7; *see also id.* at 10-43.  At the conclusion of the evidence, the Government summarized the issues:

> Your Honor, it's a little difficult to make a concise presentation when the defendant's objections basically are "I didn't do any of that" and "I was lying about myself" and so on and so forth.
>
> But fairly straightforwardly, although we're not, I don't think, required to go to this point, we have put on the date of the search warrant and his arrest.  He was arrested with the triggering quantity of drugs.  He has the prior convictions.  He gets a life sentence.  And that's what this is–really, those are the critical facts.

*Id.* at 43.  In response, Defendant continued to "take[ ] the position that he's not guilty of any of the activities that you've heard described during the testimony."  *Id.* at 44.

The Court overruled Defendant's objections to the PSR and sentenced him to the mandatory life sentence.  *Id.* at 44-46; *see also* Doc. 39.

Defendant appealed, arguing that "he met his burden of showing a fair and just reason for withdrawing his guilty plea, or at least that the district court should have held an evidentiary hearing before ruling on his motion to withdraw the plea."  Doc. 63.  The court found that in light of the extensive plea colloquy, there was no error in this Court's failure to hold an evidentiary hearing after Defendant "later changed his mind and wanted to withdraw the plea." *Id.*  The court of appeals also found:

> As to the merits of the motion itself, the court determined that Owens had the close assistance of counsel during all relevant stages of the case, that his plea was knowing and voluntary, and that judicial resources would not be conserved by permitting him to withdraw his plea.  These findings are well supported in the record and Owens does not appear to contest them.  Instead, he claims that his is no longer willing to incur a life sentence for relatives he says are actually

responsible for the crime to which he pleaded guilty.  That purported reason for changing his plea is unconvincing in light of the overwhelming evidence of Owens' guilt.  He has not established a fair and just reason for withdrawal of his plea.

*Id.*

The instant motion to vacate ensued.  On this occasion, Defendant charges that counsel rendered ineffective assistance in three ways: (1) by failing to file a timely motion to suppress; (2) by failing to argue that the Government had not proved that the substance involved was crack; and (3) by failing to argue that Defendant's sentence violated *Apprendi*.  Doc. 64.  In the supplemental motion, Defendant claimed that (1) the Court lacked jurisdiction to enhance his sentence because neither he nor his attorney was "served" with the Information and Notice of Intent and because an Assistant United States Attorney signed the Information; (2) both trial and appellate counsel were ineffective for failing to object to the Court's failure to inform Defendant of the "sentencing ritual" under 21 U.S.C. § 851(b); (3) counsel was ineffective for failing to object to the Government's failure to move for a downward departure based on substantial assistance; and (4) the state court convictions used to enhance his sentence were unconstitutionally obtained.  Doc. 66.

Each claim will be considered in turn.

## DISCUSSION

I.      Ineffective assistance of trial counsel.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).   The Court may dispose of the claim if a defendant fails to carry his

burden of proof on either the performance or the prejudice prong. *Strickland*, 466 U.S. at 697.

The Court need not address the adequacy of counsel's performance when a defendant fails to

make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319

(11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual

support for his contentions that counsel's performance was constitutionally deficient. *Smith v.*

*White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  The Court must consider counsel's performance

in light of all of the circumstances at that time and indulge in a strong presumption that counsel's

conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at

689-90.  To show counsel's performance was unreasonable, a defendant must establish that "no

competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*,

257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  "An ambiguous or silent record is not

sufficient to disprove the strong and continuing presumption...that [counsel] did what he should

have done and that he exercised reasonable professional judgment." *Chandler v. United States*,

218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001).

To show prejudice, a defendant must show more than simply that counsel's unreasonable

conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*,

466 U.S. at 693.  Instead, a defendant must show a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A

"reasonable probability is defined as a probability sufficient to undermine confidence in the

outcome." *Id*.  Additionally, prejudice is established only with a showing that the result of the

proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Furthermore, the Eleventh Circuit has recognized that given the principles and

presumptions set forth above, the cases in which a defendant can properly prevail on an ineffective assistance of counsel claim "are few and far between."  *Chandler*, 218 F.3d at 1313 (11th Cir. 2000).  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted.  *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).  "The purpose of ineffectiveness review is not to grade counsel's performance."  *Chandler,* 218 F.3d at 1313.  "[O]missions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"  *Id*. (citation omitted).

Finally, where counsel's failure "to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."  *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

A.      Failure to file motion to suppress.

In his first allegation that counsel rendered ineffective assistance, Defendant maintains that counsel should have filed a motion to suppress "the cocaine evidence used against him, as well as statements he made to police."  Doc. 64, Memorandum at 6.  More specifically, Defendant charges that counsel should have challenged the search warrant because (1) it contained false statements, (2) it failed to address the reliability of the informant, and (3) it did not establish probable cause for a search.  *Id*.

The Government does not contest that Defendant had standing to challenge the search of the Coble Drive property.  Doc. 69 at 3.

As to Defendant's allegation that the affidavit contained false information, he points only to the language in the warrant describing the residence to be searched as "occupied by or under the control of a black male, known as Christopher Owens." *See id*. at Attach.  In Defendant's estimation, the affiant, a detective with the Leon County, Florida, Sheriff's Office, acted "in reckless disregard for the truth because [he] had knowledge that [Defendant's sister] was the lessee/owner of the residence."  Doc. 64, Memorandum at 11.

While Defendant's sister may have been the actual owner or lessee of the property, Defendant cannot seriously dispute that he "occupied" the property or that it was "under [his] control."  Defendant himself states, in arguing his standing to challenge the search, that (1) he could use his sister's residence to store his personal belongings, (2) he possessed keys to the residence "that allowed him access to the home at his convenience" and "to come and go as he pleased, even if [his sister] was not home," (3) he could stay overnight "whenever he chose to" and "whenever he pleased," and (4) he often ate at the residence.  *Id*. at 8 & Ex. A.  Although Defendant may have maintained a separate apartment, these actions are more than sufficient to establish Defendant's occupation or control of the subject property and does not even border on the knowing and intentional falsity or reckless disregard for the truth required by *Franks v. Delaware*, 438 U.S. 154 (1978).  Thus, counsel was not ineffective for failing to challenge the search warrant on this ground.

As to Defendant's complaint that the supporting affidavit was challengeable because it did not state that the informant was reliable, it is also not well taken.  Defendant's argument was specifically rejected in *Illinois v. Gates*, 462 U.S. 213 (1983), when the Supreme Court abandoned the "two-pronged test" for determining probable cause in favor of a totality-of-the-circumstances analysis.  While "an informant's 'veracity,' 'reliability,' and 'basis of knowledge'

are all highly relevant in determining" probable cause, these are not "separate and independent requirements to be rigidly exacted in every case." *Gates*, 462 U.S. at 230. "Rather...they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id*. A "'bare bones'" or "wholly conclusory" affidavit which merely relates anonymous informant hearsay without any corroboration is, of course, plainly insufficient to sustain a finding of probable cause. *Id*. at 239. However, the affidavit presented to the state court judge in this case relating three separate drug buys from Defendant at the Coble Drive residence was more than sufficient to assure the judge that "there [was] a fair probability that contraband or evidence of a crime [would] be found" at that residence. *Id*. at 238. Thus, counsel was not ineffective for failing to move to suppress either the evidence or Defendant's statements on this ground or for otherwise failing to challenge probable cause for the warrant, as it clearly existed.

Finally, even if the Court assumes there was no probable cause for the issuance of the search warrant, an attack on the search would have been fruitless, as the officers executing the warrant were entitled to rely in good faith on the judge's probable cause determination. *United States v. Glinton*, 154 F.3d 1245, 1257 (11th Cir. 1998) (citing *United States v. Leon*, 468 U.S. 897 (1984)). Therefore, counsel was not ineffective for failing to seek suppression of the items seized during the search or Defendant's statements to law enforcement.

B.      Failure to argue that Government did not prove substance was crack.

In this ground for relief, Defendant argues that counsel was ineffective for failing to challenge the Government's proof regarding whether the drugs seized during the execution of the search warrant were crack cocaine, rather than some other form of cocaine base. Doc. 64,

Memorandum at 15.  Defendant admitted during the plea colloquy that he "possessed with intent to distribute...more than 50 grams of crack cocaine."  With that admission, the Government was not required to prove anything else regarding the drug quantity or type.  Nevertheless, the Court did hear testimony regarding these matters prior to sentencing.  Officers testified about only one form of cocaine base having been found in the residence, and that was "crack cocaine."  Counsel for Defendant did attempt to attack the veracity of the drug analysis report, but the Court rejected his arguments and specifically found that "the defendant possessed, with an intent to distribute, more than 50 grams of cocaine base."  Doc. 51 at 44.  Since "crack cocaine" was the only form of cocaine base addressed during the hearing, it cannot be disputed that the Court's finding in this refers to crack cocaine.  Defendant also admitted to having more than one prior drug felony offense.  Defendant's admissions, along with the Court's finding "that the specific drug amounts [were] supported by the evidence and...[were] accurate," *id*., are sufficient to trigger the mandatory life sentence.  21 U.S.C. § 841(b)(1)(A)(iii).  This was not a Guidelines sentence, and there was no "crack enhancement," as Defendant argues.  Doc. 73 at 5.  He was clearly indicted in Count Five of  possessing with intent to distribute "more than fifty (50) grams of a substance containing cocaine base, commonly known as 'crack cocaine,'" Doc. 2, and he clearly pled guilty to that charge, not to possessing with intent to distribute some other form of cocaine base, as was the defendant in *United States v. Munoz-Realpe*, 21 F.3d 375 (11th Cir. 1994).  In short, counsel was not ineffective for failing to advance further meritless arguments, when, as the Eleventh Circuit recognized, there was "overwhelming evidence" that he was guilty of possessing with intent to distribute "crack cocaine."  Doc. 63.

      C.      Failure to argue *Apprendi* violation.

      In this ground, Defendant argues that counsel was ineffective for "not arguing that the

quantity and type of drug must be submitted to a jury and proven beyond a reasonable doubt."

Doc. 64, Memorandum at 21.  By pleading guilty, Defendant flatly waived his right to have

those matters adjudicated by a jury.  This is standard in a plea context, and counsel cannot be

faulted for failing to argue about matters which were foreclosed by Defendant's admission of

guilt.  Even so, the sentencing record reflects that counsel did attempt to undermine the weight

and composition of the drugs found, and simply because he did not prevail on his arguments or

did not further pursue patently frivolous matters does not render his assistance suspect.

Defendant's plea has repeatedly been found to have been knowingly and voluntarily made, even

though on hindsight Defendant wishes he had chosen a different course.  As quoted in full *supra*,

Defendant was fully advised by the Court as to the elements of the charge to which he was

pleading guilty, including drug type and quantity, and as to the Government's burden of proof on

these issues if the case went to trial.  His argument that the record "does not show that the Court

advised" him on these matters, Doc. 73 at 6, is disingenuous and plainly refuted by the

sentencing transcript.

      II.       Lack of jurisdiction to enhance sentence.

      Defendant next alleges that the Court lacked jurisdiction to enhance his sentence because

neither he nor his attorney was "served" with the Information and Notice of Intent and because

an Assistant United States Attorney signed the Information.  Doc. 68.  Neither of these

arguments has merit.  Counsel was appointed at first appearance, Doc. 8, and Defendant, through

counsel, was served with the Information by hand delivery at the first appearance.  *See* Doc. 5 at

3.  Simply because the Information was formally filed with the Clerk of Court before counsel

was appointed is of absolutely no consequence and does not make the Certificate of Service

suspect.  Counsel for the Government was merely acting diligently in preparation for the first

appearance, which occurred several hours later.

It is also of no consequence that an Assistant United States Attorney signed the

Information on behalf of the United States Attorney.  As stated by the Eleventh Circuit:

> A United States Attorney, appointed by the President and confirmed by the
> Senate, is the chief federal law enforcement official for the judicial district he
> serves and is responsible for the prosecution of all offenses against the United
> States within his district.  An AUSA is appointed by the Attorney General to aid
> the United States Attorney in carrying out his duties.

*Nadler v. Mann*, 951 F.2d 301, 305 (11th Cir. 1992) (citations omitted).  Signing paperwork in a

criminal case for the United States Attorney is routine and well within the Assistant's statutory

duties of assisting the United States Attorney in prosecuting offenses against the United States.

*See* 28 U.S.C. § § 541, 542, & 547(1).  This claim is patently meritless.

>    III.    Ineffective assistance of trial and appellate counsel for failing to object to Court's
>            failure to inform Defendant of  "sentencing ritual" under 21 U.S.C. § 851(b).

Defendant next complains that both trial and appellate counsel rendered ineffective

assistance by failing to object to the Court's failure to follow the procedures for establishing

prior convictions pursuant to 21 U.S.C. § 851 and to attack the errors in the Information.

Defendant is correct that the Information does contain some erroneous information.  These errors

do not, however, garner Defendant any relief.   The May 26, 1989, conviction for sale of cocaine

is correct, as reflected in Defendant's own exhibit and in the Presentence Report.  *See* Doc. 68,

Attach. C.  Defendant also agreed to this prior conviction when he signed the Statement of Facts.

The 1989 conviction was not challengeable under § 851(e) because the statute of limitations had

expired for asserting a challenge to this prior conviction.  The date of the Information and Notice

was October 31, 2001, more than five years after the conviction was final; thus, pursuant to

*United States v. Weaver*, 905 F.2d 1466, 1482 (11th Cir. 1990), the Court was "not required 'to

adhere to the rituals of § 851(b) where a defendant, as a matter of law, is precluded from attacking the conviction forming the basis of the enhancement information.'" Thus, counsel's failure to insist on strict adherence to § 851(b) is irrelevant.

The second conviction listed in the Information is a March 26, 1992, conviction for sale of controlled substance. The Presentence Report indicates that the date of original conviction is correct, and that this was a conviction for possession/sale of controlled substance. In the Statement of Facts, Defendant acknowledged a 1992 conviction for sale of controlled substance. The PSR also reveals that Defendant violated his probation on that conviction, resulting in a December 29, 1994, judgment for a much longer term of imprisonment. The only judgment which Defendant provides the Court is the 1994 judgment clearly identifying Defendant as a "Probation Violator" and listing the crime as possession of cocaine. Doc. 68, Attach. A. Neither party has provided the Court with a copy of the original judgment, but this is immaterial. The Court accepted the PSR as accurate and correct, and Defendant agreed to that conviction when he signed the Statement of Facts. Certainly, there is conflicting information about whether this was a conviction for sale or for possession. Even if the Court assumes that counsel was deficient in not pointing out this discrepancy, Defendant was not prejudiced thereby. Both sale and possession of a controlled substance are felonies in Florida, and whether the conviction occurred in 1992 or in 1994, it was too old to challenge as a matter of law, as explained *supra*. Furthermore, even if counsel had filed a § 851(c) denial of this conviction, the result would not have been any different.

The third felony drug offense listed in the Information was not a conviction for sale of controlled substance as indicated in that document, but rather, for possession with intent to sell or deliver. *See* Doc. 68, Attach. B. While this 1997 conviction was challengeable, the only

ground for challenging it was that the Information was incorrect in this one respect.  The case number and the date of the judgment were correct, and it was a felony drug conviction.  The matter  would have been easily clarified at a hearing with the introduction of the judgment and an oral amendment to the Information.  Thus, even if counsel had filed a § 851(c) denial, the outcome of the hearing would not have affected Defendant's sentence.

In addition, although Defendant was not afforded the opportunity to question the validity of the prior convictions at the sentencing hearing, he was afforded that opportunity both before he appeared for the change of plea hearing, *see* 21 U.S.C. § 851(c), before he signed the Plea Agreement and the Statement of Facts, and before he pled guilty.  Defendant never intimated to the magistrate judge during the plea colloquy that he disputed the validity of any of the convictions, and even now he does not contest that he was convicted of any of these drug felony offenses.  While the mistakes in the Information arguably should have been raised by counsel, they do not result in a finding of ineffective assistance of counsel, since Defendant was not in any manner prejudiced by the failure to follow up on the mistakes.

IV.    Ineffective assistance of counsel for failing to object to Government's failure to move for downward departure based on substantial assistance.

In this ground for relief, Defendant maintains that he "continued to cooperate fully with the government...."  Doc. 68 at 14.  In Defendant's view, if counsel had "objected to the government's bad faith [he] would not have a life sentence."

The Court does not dispute that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  *Santobello v. New York*, 404 U.S. 257, 262 (1971).  However, *Santobello* provides Defendant with no relief.  Regardless of how much

assistance Petitioner believes he may have provided, the Government was never obligated by the plea agreement to file a substantial assistance motion. The plea agreement which Petitioner knowingly and voluntarily entered into and which the magistrate judge meticulously reviewed is clear that both the decision regarding whether Petitioner had provided substantial assistance and the decision whether to file a substantial assistance motion lay solely within the discretion of the United States Attorney for the Northern District of Florida. Absent a substantial showing that the Government has improperly exercised its prosecutorial discretion for a reason which is either unconstitutional or not rationally related to a legitimate governmental end, the Court cannot question that discretion. *Wade v. United States*, 504 U.S. 181, 185-186 (1992); *United States v. Forney*, 9 F.3d 1492, 1502-03 (11th Cir. 1993). Furthermore, it is plainly insufficient for a defendant crying foul regarding a substantial assistance motion merely to make a generalized allegation of improper motive on the part of the Government. *Wade*, 504 U.S. at 186. Though Petitioner assigns "bad faith" to the Government for failing to move for the downward departure he does not explain how the Government's decision was improper. He does not divulge the information he gave the Government which it could not or did not get from another source. Additionally, he does not explain how the prosecutor's decision was not a legitimate use of his prosecutorial discretion. The Government does not deny that Defendant was debriefed following his arrest; however, it maintains that it "gives no weight" to Defendant's efforts to cooperate before he fled and broke contact with law enforcement and before his re-arrest with additional drugs. Doc. 70 at 2. The Government's decision to consider Defendant's post-arrest actions in making its decision regarding whether Defendant's assistance warranted the filing of a substantial assistance motion is both constitutional and rationally related to a legitimate governmental end and does not show bad faith. Counsel could not force the Government to file

a substantial assistance motion which was completely within its discretion to file.

Finally, the law is well established that a "guilty plea means something.   It is not an invitation to a continuing litigation dialogue between a criminal defendant and the court." *Murray v. United States*, 145 F.3d 1249,  1254 (11th Cir. 1998).  In fact,

> the representations of the defendant, his lawyer, and the prosecutor at...a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*,  431 U.S. 63, 73-74 (1977).

Instant Defendant was placed under oath and advised the magistrate judge that there had been no other promises made to him that were not contained in the plea agreement.  For him now to tell this Court that his attorney "misadvised him that the government was going to file the substantial assistance motion when in fact that was not the truth," Doc. 73, is specious at best.

V.     State court convictions used to enhance sentence were unconstitutional.

In his final ground for relief, Defendant maintains that the state court convictions used to enhance his sentence were unconstitutionally obtained, and that he has not had any prior opportunity to contest them.

Defendant pled no contest to each of the three drug felonies discussed *supra*.  The court adjudicated him guilty on each occasion.  Two of the three drug cases were over five years old, and thus, they were not challengeable as a matter of law.  *See* 21 U.S.C. § 851(e).  While Defendant agrees that he could not "'challenge' the prior convictions at 'sentencing,'" he maintains that he nevertheless could challenge them under § 2255.  According to Defendant, he did not have sufficient time "in custody" to challenge either the 1989 or 1997 convictions, and

thus, in his view, this case falls within the class of "rare cases in which no channel of review was actually available...with respect to a prior conviction, due to no fault of his own" left unaddressed in *Daniels v. United States*, 532 U.S. 374, 383 (2001).

This Court does not agree.   *Daniels*, which addressed enhancements under the Armed Career Criminal Act, 18 U.S.C. § 924(c), held that as a "general rule," a defendant who has been sentenced in federal court may not lodge a § 2255 challenge to his sentence "on the ground that his prior [state court] convictions were unconstitutionally obtained."  *Daniels*, 532 U.S. at 376. More specifically, the Court found:

> If...a prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), then that defendant is without recourse.  The presumption of validity that attached to the prior conviction at the time of sentencing is conclusive, and the defendant may not collaterally attack his prior conviction through a motion under § 2255.  A defendant may challenge a prior conviction as the product of a *Gideon* violation in a § 2255 motion, but generally only if he raised that claim at his federal sentencing proceeding.

*Id*. at 382.

Even if § 851(e) does not foreclose challenges to these convictions, they cannot be attacked in this proceeding pursuant to *Daniels*.  Defendant acknowledges that Fla. R. Crim. Pro. 3.850 was the means for challenging his convictions in state court but argues that he "was released out of the State of Florida's custody before he was able to institute an action under rule 3.850" with regard to his 1989 and 1997 convictions.[1]  Doc. 68 at 16.  According to Defendant, "With no fault of [his], rule 3.850 deprived him of access to Florida Courts on his Claims.

Though this argument might be facially appealing if Defendant had actually pursued and

---

[1]He wisely does not make that argument with regard to the 1992/1994 conviction for which he served twenty-six months incarceration.

been denied relief under Rule 3.850 because he was released from custody before the resolution of his motion, it does not bear scrutiny for several reasons.  First, Defendant did not even attempt to use Rule 3.850 while he was in custody, and while he might not have gotten a ruling during his ten- and sixteen-month periods of incarceration, he certainly could have attempted this avenue of relief.  Second, even after his release, he could have sought relief in state court pursuant to a writ of error coram nobis, *see Wood v. State*, 750 So.2d 592 (Fla. 1999), and then after *Wood* struck the "in custody" requirement from Rule 3.850, Defendant had two years from the issuance of *Wood* to file a Rule 3.850 claim on either of these convictions.

Thus, whether foreclosed by § 851(e) or *Daniels*, Defendant could not attack the constitutionality of any of his state court convictions.

## CONCLUSION

For all of these reasons, the Court respectfully **RECOMMENDS** that the motion to vacate and the supplemental motion to vacate, Docs. 64 and 68, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this   28th    day of February, 2006.

s/A. Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**